Lucy WALKER, Plaintiff-Appellant,

v.

JEFFERSON COUNTY HOME, et al.,
Defendants-Appellees.

No. 82-7297.

United States Court of Appeals,
Eleventh Circuit.

March 16, 1984.

**1556**

C. Michael Quinn, Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Edwin A. Strickland, Michael L. Hall, Birmingham, Ala., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge.

Plaintiff-appellant Lucy Walker appeals from a judgment by the United States District Court for the Northern District of Alabama that defendant-appellee Jefferson County Home (the "Home") did not discriminate against Walker on the basis of race in violation of Title VII of the Civil Rights Act. This Court holds that the Home did violate Title VII. Therefore, we reverse the district court's judgment.

## I. BACKGROUND

The Home is a nursing home in Jefferson County, Alabama. In 1965, the Home hired Walker, a black woman, to work in the Home's Housekeeping Department. Later, Walker was transferred to Nursing Services as a nurse's aid. Early in 1972, the Housekeeping Department supervisor was involved in an automobile accident and had to be absent from work for several months. The Home decided to fill the position on a temporary basis. A white employee, Ivory McCutcheon, who had been hired by the Home two months earlier, was transferred from the kitchen to the Housekeeping Department supervisor position. Although McCutcheon had no previous supervisory experience, the Home did not consider anyone else for the position. After the regular supervisor returned, McCutcheon remained in the Housekeeping Department to assist the supervisor. McCutcheon worked in the Housekeeping Department for fifteen or sixteen months until August 19, 1973, when she resigned.

The regular supervisor decided to retire in June, 1974 and gave notice sometime earlier. The Home's director, Lillian Holmes, requested from the Personnel Board of Jefferson County a certified list of names of qualified people from which she could fill the supervisor position. The Personnel Board had established prior supervisory experience and a high school diploma or its equivalent as the qualifications for the position. Walker was certified as qualified and was referred to the Home with two other candidates, both of whom were white and one of whom was McCutcheon. Following interviews of the three candidates, Holmes selected McCutcheon for the position. Walker filed a discrimination charge with the EEOC, which issued a right-to-sue letter. Walker then filed this action in district court on February 20, 1976.

## II. THE DISTRICT COURT OPINION

The district court applied a disparate treatment analysis to the facts of the case. Disparate treatment occurs when "the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The district court first examined whether Walker had met the requirements of a prima facie disparate treatment case: 1) the existence of a vacant position; 2) the application to the position by appellant; 3) the selection of a person of another race; and 4) the possession by ap-

pellant of the necessary qualifications for appointment. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

The district court concluded that Walker had met the first three requirements. It found that Holmes chose McCutcheon because she had more recent supervisory experience—in particular, the supervisory experience she had gained when she replaced and then assisted the regular supervisor at the Home. There was some question about the type of supervisory experience that Walker had received prior to her employment with the Home. Prior to 1965, she held three housekeeping or janitorial type jobs, one with a high school and two with hospitals or clinics. Apparently, Walker's original application for employment with the Home in 1965, her initial application to the Personnel Board in 1973, and a deposition taken under oath several months before the trial, did not indicate that her positions prior to employment with the Home provided any supervisory experience. By supplementary notation filed June 10, 1974 with the Personnel Board and in testimony at trial, however, Walker indicated that some supervisory duties attached to her earlier positions. Nevertheless, the district court concluded that those earlier positions had little, if any, supervisory responsibilities attached to them.

Although the district court found that Walker was not "qualified," the court noted that circumstances that occurred in 1972 complicated the issue. In particular, the court found that in 1972, when McCutcheon was given the opportunity to acquire supervisory experience, the Home had a general policy, practice, or pattern of favoring whites over blacks for movement into supervisory positions. According to the district court, "this infected at least to some degree the selection of Ms. McCutcheon to be this Acting Housekeeper and in the non-consideration of Ms. Walker or others for that same position." Although the district

court was troubled that the reason for Walker's nonselection in 1974 arose out of preferential treatment given a white employee in 1972, it concluded that the statute of limitations barred Walker from litigating discriminatory treatment that occurred in 1972. In this appeal, Walker contends that the district court did not apply the proper legal analysis to the facts.

### III. LEGAL ANALYSIS

We must determine whether the district court applied the proper legal analysis to the facts of this case. Although the district court applied a disparate treatment analysis, on appeal, Walker contends that she proved both a disparate impact theory and a disparate treatment theory of discrimination. *See Teamsters v. United States,* 431 U.S. 324, 338 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (either theory may be applied to a particular set of facts). We hold that Walker has made a showing of discrimination under the disparate impact theory. Disparate impact occurs when an employer bases an employment selection decision on a criterion that is neutral on its face but disfavors black employees in operation. "Under the Act [Title VII], practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). In a disparate impact case, the court clearly may consider evidence of prior discriminatory acts if such evidence is relevant to show independently actionable conduct occurring within the statutory period.[1] *See e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980); *Fisher v. Proctor & Gamble Mfg. Co.,* 613 F.2d 527 (5th Cir.1980); *Guardians Association v. Civil Service Commission,* 633 F.2d 232 (2nd Cir.1980), *cert. denied,* ——

---

1. Thus, the statute of limitations does not prevent the court from considering 1972 events. The district court relied on *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), to rule that Walker's suit was time barred. Unlike our case, however, in *Evans* the plaintiff relied on a "continuing violation" theory, not on a disparate impact theory.

**1558**

U.S. ——, 103 S.Ct. 3568, 77 L.Ed.2d 1410 (1983).

■ In this case, the Home established a requirement of prior supervisory experience for promotion to Housekeeping Department supervisor. On its face, such a policy is neutral because it applies equally to all applicants. The district court found, however, that the Home had a past policy or practice of favoring whites over blacks for movement into positions from which they could gain initial supervisory experience.[2] In turn, that past intentional discrimination was carried into the 1974 policy, which, although neutral on its face, had a discriminatory impact on blacks. In other words, blacks were first denied the opportunity to obtain supervisory experience, and then were told that they were "unqualified" for promotion because they lacked the very quality that had intentionally been denied to them. Thus, the requirement of supervisory experience served to freeze the status quo of prior discriminatory employment practices.

■ Lest it be said that the Home's policy of favoring whites over blacks for supervisory positions had no impact on other blacks who might seek to fill the vacancy, we call attention to a personnel policy of the Home. That policy, which was in effect in 1974, read into the record, was:

When filling vacant positions the County Home gives first consideration to Home employees who meet the job requirements in preference to outside recruitment. However, you must be eligible for appointment under the rules established by the Personnel Board of Jefferson County.

Thus, the employees of the Home became a separate group for consideration for promotion. A policy having a disparate impact on the black employees as a class therefore constituted disparate impact.

■ Once the plaintiff has shown that the facially neutral employment practice has a discriminatory impact, the employer may nevertheless prevail by showing that the practice was a "business necessity." A practice is a business necessity only if it bears "a manifest relationship to the employment in question." *Griggs v. Duke Power Co.,* 401 U.S. at 432, 91 S.Ct. at 854. *Accord Connecticut v. Teal,* 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). The burden of persuasion shifts to the employer to prove business necessity and rebut the plaintiff's prima facie case. *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 619 (11th Cir.1983); *Johnson v. Uncle Ben's, Inc.,* 657 F.2d 750, 752–53 (5th Cir.1981), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982). In determining whether the employer has met its burden, the court looks at the amount of skill required for the position and the economic and human risks involved. "When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant, the courts should examine closely any pre-employment standard or criteria which discriminate against minorities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related." *Spurlock v. United Air Lines, Inc.,* 475 F.2d 216, 219 (10th Cir.1972). *See EEOC v. International Union of Operating Engineers, Local 14 & 15,* 553 F.2d 251 (2d Cir.1977) (union admission requirements of city operator's license, ability to operate more than one piece of equipment, and 200 days' experience were not job related); *Fisher v. Proctor & Gamble Mfg. Co.,* 613 F.2d 527, 541–42 n. 27 (5th Cir.1980), *cert. denied,* 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981) (injunction against 20-year experience requirement for promotion from nonmanagement to management positions upheld in view of racial impact); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979) (experience prerequisite for eligibility for apprenticeship program and on-the-job training found to perpetuate effects of

---

**2.** The Home and the district court questioned whether McCutcheon's promotion in 1972 occurred prior to or subsequent to March 24, 1972, the date Title VII first became applicable to government employers. The record, however, indicates that McCutcheon was promoted sometime in April 1972.

past discrimination; district court ordered to consider whether experience prerequisite should be shortened). *Compare Spurlock v. United Air Lines, Inc.,* 475 F.2d 216 (10th Cir.1972) (job of airline flight officer requires high degree of skill, and economic and human risks are great); *Hodgson v. Greyhound Lines, Inc.,* 499 F.2d 859 (7th Cir.1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) (requirement that applicants for bus-driving position be younger than 35 years of age upheld on safety grounds). *See generally* B. Schlei & P. Grossman, Employment Discrimination Law, 167–72 (1983).

The Home failed to meet the rigorous standard of proving that the requirement of supervisory experience was job related and a business necessity. The Home's only evidence in support of business necessity was its emphasis on the importance of the Housekeeping Department supervisor's job in a nursing home.[3] The Home did not show that the job of Housekeeping Department supervisor is highly skilled or that the economic and human risks involved in hiring an unqualified applicant are great. Moreover, when McCutcheon was hired as a temporary supervisor in 1972, she had no supervisory experience. Therefore, we are not persuaded that the Home demonstrated that its supervisory experience policy was a business necessity.

Under the disparate impact model, if the employer establishes job-relatedness, the burden then shifts to the employee to show the availability of other selection devices with a lesser adverse impact which would serve the employer's needs, *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975), or to show that the employer was

using the practice as a pretext for discrimination. *Connecticut v. Teal,* 457 U.S. 440, 447, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982). Because the Home failed to establish job-relatedness, we need not examine alternatives or pretext.[4]

The Home urges that Walker did not properly raise the occurrence of discrimination in 1972 in her EEOC charge, complaint, or in the pretrial order. We find this argument to be without merit.

Accordingly, the judgment is REVERSED and REMANDED to the district court to determine the appropriate relief.

3. The Personnel Board announcement described the duties as follows:

Plans, assigns and supervises the work of a group of employees performing cleaning, housekeeping, and minor maintenance duties; demonstrates methods and instructs subordinates in the performance of such duties as sweeping, mopping, waxing and polishing floors, washing windows, cleaning restrooms and replenishing necessary supplies; inspects facilities to assure adherence to standards of cleanliness and sanitation;

directs the mending, pick-up and distribution of linens; prepares work schedules and assures adequate staffing, evaluates operations and makes necessary changes to improve the quality of performance; requisitions janitorial and housekeeping supplies; performs related duties as required.

4. The district court apparently reversed the order of proof. It determined the question of pretext before examining business necessity.