Ray Wayne BEAVERS, et al.,
Plaintiffs,

v.

AMERICAN CAST IRON PIPE
COMPANY, Defendant.

Oscar JENKINS, et al., Plaintiffs,

v.

AMERICAN CAST IRON PIPE
COMPANY, Defendant.

Nos. CV–86–N–1982–S, CV–88–N–933–S.

United States District Court,
N.D. Alabama, S.D.

Nov. 21, 1990.

---

Robert L. Wiggins, Jr., John Scott Greene, Ann K. Norton, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiffs.

Maura R. Goodwyn, J. Frederick Ingram, J. Patrick Logan, Robert G. Tate, Jr., Mark McCarroll Lawson, Sue A. Willis, Burr & Forman, Birmingham, Ala., Jayna Jacobson Partain, Maynard, Cooper, Frierson & Gale, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

### I. Statement of the Case.

In these consolidated actions, six individuals seek relief on behalf of themselves and a class of plaintiffs consisting of past, present and future male employees of American Cast Iron Pipe Company ("ACIPCO" or "the Company"). The plaintiffs assert that since 1962 ACIPCO has maintained a policy of requiring that in order to be covered under the company's medical insurance benefits plan, "children and legally adopted children must reside full-time

with a permanent or full-time or retired employee." They contend that the requirement has a disparate impact on male employees because "women have historically been awarded custody of children in divorce actions more frequently than men." As a result of the alleged disparate impact of ACIPCO's policy, the plaintiffs argue that "plaintiff [and the class] were wrongfully denied health insurance coverage and medical services for their children because of their sex and race" in violation of Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000e-2). They also claim that the policy violates the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA") because divorced men receive less remuneration than do women for the same or similar work. Finally, they argue that the policy violates the Company's fiduciary duties under ERISA, 29 U.S.C. § 1002 et seq.[1]

The defendant has moved the court for summary judgment in its favor as to all claims. The motions have been fully briefed and were submitted for decision on November 15, 1990. The motions for summary judgment should be granted and the action should be dismissed with prejudice.

## II. The Title VII Claims.

The Company maintains that all plaintiffs' individual Title VII claims are time barred because none of the named plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within the required time after the date of the alleged unlawful employment practice about which they now complain. In order to assert a claim of discrimination under Title VII, a claimant must have filed a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred. 42 U.S.C.A. § 2000e-5(e).[2] This 180-day period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 692 (5th Cir. Unit B 1982). ACIPCO argues that the discriminatory act occurred, as to each plaintiff, on the occasion when the Company's residence requirement was applied to that plaintiff. The plaintiffs argue that a new violation, and a new limitations period, occurs each time the company provides health care benefits to the dependent children of women, while denying those same benefits to the children of the plaintiffs.

■ Before proceeding to consideration of this issue, it is necessary to dispose of the plaintiffs' contention that the court has already ruled that Beavers' discrimination charge was timely and that ruling constitutes the law of this case. In his memorandum opinion of January 13, 1989 dealing with class certification, Judge Acker stated, "This court is satisfied that Mr. Bea-

1. This action was initiated on October 24, 1986 when Ray Wayne Beavers filed suit against his employer, ACIPCO, on behalf of himself and a putative class consisting of past, present and future male ACIPCO employees. Mr. Beavers and other named plaintiffs are employed in ACIPCO's plant production and maintenance department. (Affidavit of J. Michael Brand, pp. 6–9). Mr. Beavers alleged violations of Title VII of the Civil Rights Act and of the Equal Pay Act of 1963. On October 27, 1987, he amended his complaint to add Oscar Jenkins and Terry Chaffin as named plaintiffs and class representatives. Their claims are identical to those asserted by Mr. Beavers. On July 1, 1987, Judge William M. Acker of this court dismissed the individual claims and denied class certification. The United States Court of Appeals vacated and remanded. *Beavers v. American Cast Iron Pipe Co.*, 852 F.2d 527 (11th Cir.1988). In June, 1988, Oscar Jenkins, Richard Johnson and James Dollar filed a separate but identical ac-

tion, *Jenkins v. American Cast Iron Pipe Company*, CV 88-C-0933-S. On October 18, 1988, Johnson and Charles Harmon were permitted to intervene in the original action as additional class representatives and individual plaintiffs. Their claims are identical to Mr. Beavers' claims but with the additional allegation that ACIPCO has "wrongfully denied health insurance coverage and medical services for their children because of their sex and race." That action was predicated on the individual EEOC charges of Jenkins, Johnson and Dollar. On December 20, 1988 the two cases were consolidated for all purposes.

2. Under 42 U.S.C. § 2000e-5(e), an EEOC charge must be filed within 180 days of the alleged discriminatory act unless a charge has first been filed with a state or local agency. In that case, the period is extended to a maximum of 300 days. The 300-day period has no application to this case.

vers' EEOC charge was timely and kept the door open for a class." That decision was rendered, however, before the United States Supreme Court released its decision in *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). The prior opinion may have been correct when issued. It is not correct following *Lorance* and it would be error for this court to adhere to it in the face of controlling precedent to the contrary.

■ The courts have held for many years that the purpose of the 180–day limitations period is to protect employers from having to litigate stale claims and to encourage the prompt resolution of employment disputes. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Failure to file a timely charge with the EEOC operates as a bar to any action on the claim. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The 180–day statute of limitations clearly runs from the "time of the discriminatory acts, not ... the time at which the *consequences* of the acts become most painful." *Delaware State College v. Ricks*, 449 U.S. at 258, 101 S.Ct. at 504 (emphasis in original). The question whether an EEOC charge is timely "turns on whether the discriminatory act has occurred within 180 days before filing, not on whether the effects of that discriminatory act are felt within 180 days of the filing." *Allen v. United States Steel Corp.*, 665 F.2d 689, 693 (5th Cir. Unit B 1982). Applying that principle, the Supreme Court found in *Ricks* that it was the decision to deny a college professor tenure, to be followed inevitably a year later by dismissal, and not the dismissal itself that was the discriminatory act. In order to assess the timeliness of the plaintiffs' EEOC charges, the court must "identify precisely the 'unlawful employment practice[s]' of which [they] complai[n]." *Delaware State College v. Ricks*, 449 U.S. at 257, 101 S.Ct. at 503.

In *Lorance, supra,* the Supreme Court applied the principles of *Ricks* and *United Air Lines v. Evans* to a facially neutral seniority system which had the effect of awarding less seniority to women than to men. The court held, "[W]hen a seniority system is nondiscriminatory in form and application, it is the allegedly discriminatory *adoption* which triggers the limitations period...." *Lorance v. AT & T Technologies, Inc.*, 109 S.Ct. at 2268–69 (emphasis in original). The court refused to permit the female plaintiffs to challenge their demotions because the act which gave them less seniority than male employees was the adoption of the seniority system. That occurred more than three years before the demotions.

The plaintiffs suggest that because *Lorance* involved a *bona fide* seniority system, given special treatment under 42 U.S.C. § 2000e–2(h), the holding of that case should be limited to seniority systems. While it is certainly true that the court's holding recognized the special nature of seniority systems, a careful reading suggests that the result would have been the same even if no seniority system had been involved. The decision in *Lorance* was rendered out of respect for the "value judgment concerning the point at which interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale [claims].'" 109 S.Ct. at 2269, *quoting Ricks*, 449 U.S. at 260, 101 S.Ct. at 505. At least one other court has found no difficulty in applying *Lorance* to cases not involving seniority systems. In a case brought under the Fair Labor Standards Act, the Fifth Circuit has held that city fire fighters were required to bring an action challenging reductions in base pay within three years of the date on which those reductions occurred. Judge Rubin held that each paycheck was not a new violation. The discriminatory act occurred when the city reduced the fire fighters base pay. *Hendrix v. Yazoo City*, 911 F.2d 1102 (5th Cir.1990). To the argument that *Lorance* should apply only to seniority systems, he said, "This argument is unpersuasive. As *Lorance* makes clear, the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facial-

ly neutral, simply giving effect to prior discrimination, in which case there is no continuing violation." 911 F.2d at 1104.

Relying on *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), the plaintiffs assert that "if the first application of the policy to a plaintiff was outside the 180 day period, this would make no difference so long as subsequent applications of the policy continued to be discriminatory inside the 180 day period". They argue that the application of the policy was a continuing violation for the entire time period that their dependent children were not provided health care coverage. In *Bazemore*, plaintiffs were black employees of the North Carolina Agricultural Extension Service who were regularly paid less then were their white counterparts. Prior to the adoption of the Civil Rights Act of 1964, the extension service was divided into white and black branches. Following adoption of the act, the two branches were merged but blacks continued to be paid less than whites. The court said, "A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, he is liable under that statute." *Bazemore*, 478 U.S. at 395, 106 S.Ct. at 3006. The court reasoned that a discriminatory practice that began before the effective date of Title VII could not be permitted to continue after the effective date of the Act. *Id.* The court said, in effect, that each act done in furtherance of the discriminatory policy was a new violation. "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." *Bazemore*, 478 U.S. at 396–97, 106 S.Ct. at 3006–07.

As explained by Justice Scalia, the plaintiffs' reliance on *Bazemore* to support their continuing violation theory is misplaced. Quoting from *United Air Lines v. Evans*, 97 S.Ct. at 1890, the court said, "[A] challenge to a *neutral* system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer." *Lorance*, 109 S.Ct. at 2267. Thus, the court distinguished between the facially discriminatory system present in *Bazemore* and the facially neutral systems found in *Lorance* and here.

The court's task then is to identify with certainty the specific discriminatory act about which each plaintiff complains and then to determine whether a· charge was filed with the Equal Employment Opportunity Commission within 180 days of that act. In *Roberts v. Gadsden Memorial Hosp.*, 850 F.2d 1549, 1550 (11th Cir.1988), a case decided before *Lorance*, the court held that "a claim arising out of an injury which is continuing only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180–day limitation period." The court noted that the plaintiff's claim was time-barred because he "admitted that he was aware of his rights in 1978. He could have asserted them at that time". *Id.* at 1550. The 180–day period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." *Stafford v. Muscogee County Bd. of Education*, 688 F.2d 1383, 1387 (11th Cir.1982), *quoting Allen v. United States Steel Corp.*, 665 F.2d at 692. Such a result facilitates "the twin goals of preventing stale claims and encouraging prompt resolution of employment disputes." *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1076 n. 9 (11th Cir.1986).[3]

---

**3.** Plaintiff cites *Walker v. Jefferson County Home*, 726 F.2d 1554 (11th Cir.1984) for the proposition that "relief could be granted for a 1974 discriminatory act within the 180 day period even though it was an application of a discriminatory policy arising in 1972, two years before the Charge." *Walker* does not support

the plaintiffs' position for at least two reasons. First, the case was decided before *Lorance* and is inconsistent with it. Second, a closer reading reveals that Walker was, in fact, given relief based upon the refusal of the defendant to promote her during the period covered by the limitations period and not for an alleged discrimina-

The undisputed facts are that in 1962 ACIPCO adopted and implemented a policy requiring that dependent children of its permanent, full-time and retired employees reside full-time in the home of such employees or retirees in order to be covered under the company's medical insurance policy. The Civil Rights Act of 1964 became effective and, thus applicable to the Company's employment practices, in 1965. At various times after 1965 and before bringing these actions, each of the plaintiffs became subject to the Company's residence requirement by virtue of divorce, separation, or otherwise and lost medical and health insurance coverage for their non-resident dependent children. No plaintiff filed a charge of discrimination with the EEOC within 180 days of the date on which they lost coverage for their children.

Ray Wayne Beavers was divorced on July 7, 1975 and his wife was awarded custody of their four children. On that same date he informed the Company of his impending divorce and the loss of custody of his children. ACIPCO took the necessary steps to remove medical and health coverage for his children at that time. He testified on deposition that he knew "prior to 1982" that ACIPCO's policy adversely affected him. Mr. Beavers filed his charge of discrimination with the EEOC on May 23, 1983, almost eight years after ACIPCO removed his children from medical coverage. Mr. Beavers admittedly knew that the challenged act had occurred long before he filed his EEOC charge. Because he was required to file his charge within 180 days of the discriminatory act and that act occurred when he lost custody of his children in July 1975, Mr. Beavers' charge, filed eight years later, was untimely.

Terry Chaffin was legally separated from his wife in July 1980, and was divorced on September 25 of the same year. His wife was awarded custody of their two children. In 1981 or 1982 Mr. Chaffin complained that the ACIPCO policy regarding health and insurance benefits for dependent children who did not live in his home

was unfair. He admitted in discovery that he has never filed a charge of discrimination with the EEOC. Consequently, he has not met the necessary prerequisite for bringing this action and his individual claim is due to be dismissed.

Oscar Jenkins was divorced on March 24, 1981 and his wife was awarded custody of their children. His children were removed from dependent medical coverage on April 24, 1981. He testified that he learned of the policy regarding dependent medical and health coverage soon after his divorce. However, he did not file his EEOC charge until August 11, 1987, over six years after his children were removed from coverage.

Charles Harmon was divorced on September 28, 1981 and his wife received custody of their children. His children were removed from dependent medical coverage on October 14, 1981. Mr. Harmon filed a charge of discrimination with the EEOC on September 8, 1987, almost six years after his children were denied medical coverage. Mr. Harmon's charge was filed long after he "knew the challenged act had occurred" and his individual claim under Title VII is consequently barred.

Plaintiff Richard Johnson knew as early as 1977, when he was separated from his wife, that his children were not covered by his company medical and health benefits plan. He was divorced on February 25, 1980 and his wife received custody of their children. His EEOC charge was filed on September 8, 1987.

James Dollar was divorced on December 2, 1986 and his wife received custody of their children. He notified ACIPCO of his loss of custody and his children were removed from dependent medical coverage on December 4, 1986. His EEOC charge was filed on August 11, 1987, eight months after the alleged discriminatory act.

Each of the named plaintiffs in this case filed his EEOC charge well outside the 180–day period following the alleged discriminatory act of removing his children from coverage for medical and health benefits. Each knew that his children were no

tory act two years before. It was clear that the plaintiff in *Walker* had filed a timely EEOC

charge following the second act, the act for which she received relief.

longer covered at the time he lost custody but none filed a charge within 180 days. To hold that they may now bring their charges many months and in most cases years, after the alleged discriminatory act occurred "would expose employers to a virtually open-ended period of liability and would ... read the statute of limitations right out of existence." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 534 (5th Cir.1986). The law is clear that the failure to file a timely charge of discrimination with the EEOC operates as a bar to suit. *United Air Lines, Inc. v. Evans, supra*, 431 U.S. at 555, n. 4, 97 S.Ct. at 1887, n. 4. Accordingly, plaintiffs are barred from pursuing their individual claims as a matter of law and summary judgment will be entered in favor of the defendant on the plaintiffs' individual Title VII claims.[4]

■ Like the individual claims, all class claims must also be dismissed. Initially, the court notes that the class here was certified on the Title VII claims only.[5] Plaintiffs argue that "the other plaintiffs and class members have the right to rely on Beavers' EEOC charge and this lawsuit even if Beavers' own individual claim is time-barred." Such a claim is directly contrary to the law in the Eleventh Circuit. In *Allen v. United States Steel Corp., supra*,

the court upheld the district court's ruling that "because none of the filing plaintiffs had submitted a timely EEOC complaint as to her own individual claims, the nonfiling plaintiffs were also time barred." 665 F.2d at 695. The court noted there was no reason to believe the rule would be different in the class action context and that "the class action cases also focus on whether some plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claims." *Id.* at p. 695, n. 3. Further, in *Long v. State of Florida*, 805 F.2d 1542, 1546 (11th Cir.1986), a class action suit, the court held that "under Title VII the discriminatory event against each employee must take place within the requisite time frame before such an employee can be included in the class." Plaintiffs' theory that class members should be allowed to proceed despite the dismissal of the named plaintiffs is without support and, in the opinion of the court, is meritless.[6] All Title VII claims on behalf of the class will be dismissed.

## III. The ERISA Claim.

■ Plaintiffs also seek relief under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*,

---

4. Defendant also moved for summary judgment on the merits of the race and sex discrimination claims and the claims were briefed by the parties. However, the merits of those claims will not be addressed by the court because all plaintiffs' individual Title VII claims are time barred.

5. In their memorandum in support of class certification filed on December 16, 1988, plaintiffs state that "The present case is suitable for class certification. Typicality and commonality are a given. The case involves *one issue:* whether the defendant's policy of disallowing medical benefits and services to children who do not reside full-time with the employee violates *Title VII of the Civil Rights Act of 1964 by having disparate impact on male employees.*" (Plaintiff's Memorandum at p. 6) (emphasis added). Judge Acker issued an order certifying the class on January 13, 1989. The class was not certified on the ERISA or Equal Pay Act issues.

6. The cases cited by plaintiffs to support their contention that the class members should be allowed to proceed despite the untimely claims of the named class representatives are based on the policy of allowing an individual to proceed

with a claim after class certification is denied. For example, the holding in *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) was that "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." 462 U.S. at 353–354, 103 S.Ct. at 2397–2398. However, it does not follow from this holding, and no case has held, that a class member may rely on a named plaintiff's EEOC charge which is determined to be time barred. A class member who filed a timely EEOC charge may proceed in a separate action but this situation is not presently before the court; the court notes that no plaintiff who filed a timely EEOC charge has intervened in the case. For purposes of this action, class members may not proceed where they are inadequately represented by named plaintiffs; a class representative cannot adequately represent anyone where his own claim(s) is time barred.

("ERISA").[7] However, the district court's original order by Judge Acker, dated July 1, 1987, dismissed the action in its entirety including the plaintiffs' second amended complaint which set out their ERISA claims. Defendant briefed its motion to dismiss the second amended complaint on May 22, 1987 on the ground that the plaintiffs challenged the content of the terms of the plan rather than the administration of the plan's provisions. By order dated May 26, 1987, Judge Acker stated that the defendant's motion to dismiss the second amended complaint would be taken under submission by June 5, 1987. On July 1, 1987, he issued a ruling on six motions in the case, including the motion to dismiss the amended complaint, and held that "upon hearing these motions, to which there were no objections, the court finds them all well taken and they are all hereby GRANTED." Judge Acker's decision is the "law of this case" to which this court must adhere.[8] This decision was clearly on the merits and on appeal, plaintiffs did not challenge the district court's disposition of their ERISA claims; they briefed only the propriety of the dismissal of their com-

plaint under Rule 37, Fed.R.Civ.P.[9] In *Greenbriar Ltd. v. City of Alabaster*, 881 F.2d 1570 (11th Cir.1989), the Eleventh Circuit noted that, "Although Greenbriar refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits as to this issue in its initial or reply brief. Accordingly, the issue is deemed waived." *Id.* at 1573, n. 6. Likewise, plaintiffs' failure in the present case to challenge the dismissal of their ERISA claims on appeal operates as a waiver of that issue. *See also, Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979) (Although point was raised in statement of issues, issue was deemed abandoned by appellant where it was not addressed anywhere else in the brief); *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 324 (5th Cir.1977) (Mere mention in brief on appeal that district court was in error, absent any specific argument as to how the court was in error, was insufficient to present the matter for adjudication on appeal); *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1430 (7th Cir.1986) (Issue waived on appeal where its only mention in brief

---

**7.** In their response brief on the ERISA issues, plaintiffs attempt to state, for the first time, a claim under ERISA § 510, 29 U.S.C. § 1140 and a claim that defendant's policy is arbitrary and capricious. Rule 16(e) of the Federal Rules of Civil Procedure provides that the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order. The order ... shall be modified only to prevent manifest injustice." The parties are "bound by their agreement.... and may not introduce at trial issues excluded in the pretrial order." *Randolph County v. Alabama Power Co.*, 784 F.2d 1067, *modified on other grounds*, 798 F.2d 425 (11th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 833 (1987). Although this action has been pending for over four years, plaintiffs did not mention these claims until they briefed the issues in response to defendant's motion for summary judgment. Consequently, plaintiffs' claims under Section 1140 and their claims that ACIPCO's policy was arbitrary and capricious will be stricken. They "cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Hullman v. Board of Trustees of Pratt Community College*, 732 F.Supp. 91, 93 (D.Kan.1990).

**8.** "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should

continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Industries, Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), *citing Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The court notes that the "law of the case" doctrine may not apply to those plaintiffs who intervened subsequent to Judge Acker's decision to dismiss the ERISA claims on the merits. Nevertheless, as will be discussed, the ERISA claims of all plaintiffs are due to be dismissed on the merits.

**9.** As previously stated, on July 1, 1987, Judge Acker entered an order granting ACIPCO's motion to dismiss the second amended complaint, dismissing the individual claims of Beavers, Jenkins and Chaffin under Rules 37(d) and 41 of Fed.R.Civ.P. Rule 37(d), Fed.R.Civ.P. provides that if a party fails to attend at deposition or serve answers to interrogatories or respond to request for inspection, the court may, among other measures, dismiss the action. The plaintiffs Beavers, Jenkins and Chaffin appealed the Court's order, and briefed only the propriety of the Court's dismissal of their claims pursuant to Rule 37. They did not challenge the dismissal of the ERISA claims on the merits.

was reference to argument in motion before district court).

The court also notes that the opinion of the court of appeals did not mention, and did not rule on, the dismissal of the ERISA claim on the merits.

■ Even if Judge Acker's ruling on the ERISA claims is not construed as a disposition on the merits, there is no basis in law or fact for the ERISA claims stated by plaintiffs. ACIPCO's medical benefits plan, which plaintiffs claim violates ERISA, is an "employee welfare benefit plan", which includes any plan, in part, maintained for the purpose of providing "medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability ..." ERISA, 29 U.S.C. § 1002(1). Section 1132(a)(1)(B) permits a participant or beneficiary to bring a civil action "to recover benefits *due him under the terms of the plan,* to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (Emphasis added). First, the plaintiffs are not entitled to the benefits they seek. The plan does not provide dependent coverage for children not living with the parent; it is precisely the absence of such coverage that plaintiffs challenge in this action. Section 1132(a)(1)(B) does not create any right to benefits under ACIPCO's plan. Additionally, plaintiff's claim that "the plain meaning of this statute (ERISA) makes discrimination of any kind a violation under ERISA" is directly contrary to the United States Supreme Court's statement in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). In *Shaw,* the court clearly stated that "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." Plaintiffs simply do not have an ERISA claim on the basis of sex or race. As several circuits have noted, "ERISA was not amended to prohibit discrimination [on the basis of sex and race]." *Spirt v. TIAA-CREF,* 691 F.2d 1054, 1065 (2d Cir.1982), *vacated on other grounds,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983); *Bu-*

*cyrus–Erie Co. v. Wisconsin Dept of Indus.,* 599 F.2d 205, 211–12 (7th Cir.1979). Further, the Eleventh Circuit has required proof of a constructive discharge in order to prove discrimination under ERISA § 510, 29 U.S.C. § 1140. *See Phillips v. Amoco Oil Co.,* 614 F.Supp. 694 (N.D.Ala. 1985), *aff'd,* 799 F.2d 1464 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Absolutely no evidence exists for a finding of constructive discharge.

Plaintiffs further claim that the defendant acted in an "arbitrary and capricious manner" by "denying the plaintiffs medical and dental benefits for reasons which do not secure any legitimate managerial interest of the defendant." (Plaintiffs' Letter Brief, at p. 1). The "arbitrary and capricious" standard only governs a claim for denial of benefits under the terms of an employee benefit plan, 29 U.S.C. § 1132(a)(1)(B); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); the issue is whether the employer's denial of benefits was arbitrary and capricious under the terms of the plan. The plaintiffs were not entitled to benefits under the plan; thus, they cannot arbitrarily be denied benefits under the terms of the plan. The ERISA claim will be dismissed.

IV. The Equal Pay Act Claims.

■ As has previously been noted, the present class was certified solely on the Title VII claims. Furthermore, the law is clear that plaintiffs cannot pursue their Equal Pay Act claims as a typical class action since it is undisputed that no class member has affirmatively "opted in". 29 U.S.C. § 216(b) gives "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" the right to bring suit in state or federal court against an employer who is allegedly violating the Equal Pay Act. However, this section requires each of these "other" employees to give his or her consent in writing, thus eliminating a "normal" class action under Fed.R.Civ.P. 23. *Id.* The claim by plaintiffs that they should be allowed to "continue their Equal

Pay claims as a class regardless of whether they are pursued under the provisions of Rule 23 or the statute governing class actions under the EPA" is directly contrary to the plain text of the statute as well as the case law. *See La Chapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (it is clear that "[29 U.S.C. § 216(b)] precludes pure Rule 23 class actions").[10]

■ Since none of the class members "opted into" the class, only the EPA claims of the named plaintiffs will be addressed. Mr. Beavers, Mr. Chaffin, Mr. Jenkins, Mr. Johnson, Mr. Dollar and Mr. Harmon claim that defendant has violated the Equal Pay Act by paying unequal wages to female employees who performed equal or substantially equal work.[11] In order to establish a prima facie case under the EPA, plaintiffs must prove "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions'". *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *EEOC v. White & Sons Enterprises*, 881 F.2d 1006, 1009 (11th Cir.1989). Thus, each plaintiff must prove that he was paid less than a female who performed substantially equal work. The plaintiff argues that "for purposes of the medical and dental benefits plan the defendant has decided that *all jobs* in the Company involve equal skill, effort, and responsibility under similar working conditions and, for this reason, all jobs receive exactly equal services and benefits under such plan." Evidently, plaintiffs conclude from this argument that all jobs at ACIPCO should be considered substantially equal for purposes of the Equal Pay Act. This unusual theory has no support in the reported law and the plaintiffs have cited no authority for it. The adoption of

plaintiffs' novel theory would eliminate the essential element of an EPA claim that the jobs being compared involve "equal skill, effort, and responsibility, and which are performed under similar working conditions." *County of Washington v. Gunther*, 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981). The question of what factors a company considers when determining its health benefits plan is of no possible relevance under the Equal Pay Act. The court will address whether the elements of an Equal Pay Act violation have been met as to each plaintiff individually.

■ A. Ray Wayne Beavers. In order to establish a prima facie case under the Equal Pay Act, Mr. Beavers, as well as each plaintiff, must establish that the defendant paid different wages to female employees for equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. Mr. Beavers has not even attempted to point to a female who performed substantially equal work as did he. Thus, as a matter of law, his claim under the Equal Pay Act must fail. The defendant has shown that Mr. Beavers can not, even if he had attempted to, show that he was paid less than a female performing substantially the same work. Beavers has worked as a Machinist, which is a Job Pay Group 12 position. No female has ever worked as a machinist and the only Job Title held by a woman in Pay Group 12 is "Coordinator", which is primarily a clerical job in the shipping department. A Machinist must read and interpret blueprints and complete an apprenticeship or training program. A Coordinator "must have clerical aptitude and the ability to learn certain bookkeeping fundamentals." (Exhibits 3 and 15 to Brand Affidavit.) As a matter of law, the

---

**10.** In brief, counsel for the plaintiffs argue that the court should now, four years into the case, after the pretrial conference and shortly before the scheduled trial, certify a class under the EPA and afford putative class members an opportunity to opt into the action for purposes of the EPA claim. Given the plaintiffs' long and extended opportunities to "take care of business"

and to the extent that it has discretion to do so, the court declines to prolong this agony further.

**11.** Although plaintiffs alleged race discrimination under the EPA, the Equal Pay Act prohibits discrimination on the basis of sex only. *See Marshall v. Western Grain Co.*, 838 F.2d 1165, 1172 (11th Cir.1988).

job of Coordinator and Machinist are not "substantially equal" in terms of knowledge, skill, effort or responsibility. In *Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir.1973), the court noted two examples of dissimilar jobs given by Congress in the guidelines to the Equal Pay Act "The work of a machine operator and the work of a skilled machinist cannot be equated; Plant and office clerical assignments are normally distinguishable." *Id.* at 238, n. 7, *quoting* Cong.Rec., Vol. 109, Part 7 (88th Congress, 1st Session). If the jobs of machine operator and skilled machinist cannot be equated, there is certainly no basis for holding that the jobs of machinist and clerical worker are substantially identical. Mr. Beavers fails to prove an essential element of his claim under the EPA and summary judgment will be entered against him on this claim.

■ B. Terry Chaffin and Oscar Dewayne Jenkins. Mr. Chaffin and Mr. Jenkins are discussed together because they both held the job of Valve Kit Assembler, which is a Job Pay Group 10 position. The minimum qualifications include the ability to read and understand valve blueprints, and to perform arithmetic operations quickly and accurately. (Exhibit 5 to Mr. Brand's Affidavit). Neither Mr. Chaffin nor Mr. Jenkins allege that a particular female performed substantially equal work for more pay than they received. A plaintiff "must, at a minimum, identify by names or job titles the female employees [he] alleges received higher pay for substantially equal work." *Grant v. Pfizer Inc.*, 683 F.Supp. 41, 43 (S.D.N.Y.1988). Defendant notes that the only Job Pay Group 10 position held by a female is that of Billing Clerk, another clerical job which requires typing skills and a good command of grammar or spelling. (Exhibit 17 to Mr. Brand's Affidavit). Common sense dictates that these two jobs are in no way substantially similar and the EPA claims of Mr. Chaffin and Mr. Jenkins fail as a matter of law.

■ C. Richard Nathaniel Johnson. Mr. Johnson was a Production Machinist which is in Job Pay Group 9. The qualifications for this position include the ability to read and interpret blueprints, to apply "shop" mathematics, to use various other tools and instruments, and to determine the speed, number and depth of various "cuts" on products depending on the amount of metal to be removed. (Mr. Brand's Affidavit, Exhibit 8). Again, no female is identified as performing the same or substantially similar work for more pay. The defendant produced evidence that the only Job Title in Pay Group 9 held by a female is Clerk Departmental, a job which requires typing skills and a good command of grammar and spelling. As a matter of law, Mr. Johnson has failed to identify a female who performed substantially equal work for more pay than he received. Accordingly, summary judgment is appropriate on his Equal Pay Act claim.

■ D. James Allen Dollar. Mr. Dollar worked as a production machinist between July 21, 1986 and January 22, 1990, but, like Mr. Johnson, cannot prove that a female employee performed substantially equal work for unequal wages. In his affidavit, Mr. Dollar identifies four women who "perform jobs requiring less skill, effort and responsibility under similar working conditions to that of my job." (Mr. Dollar's Affidavit at p. 6).[12] It is clear that "where the amount or degree of skill required to perform one job is *substantially greater* than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects." 29 C.F.R. § 1620.15(a) (1990) (emphasis added). Mr. Dollar was also employed as a Radial Drill operator and Machinist Apprentice "A". The Job Pay Group for Radial Drill Operator is 7. (Mr. Brand's Affidavit, p. 8.) Since October 1, 1983, no female production and maintenance employee of ACIPCO has held a job in Job Pay Group 7. As for the Machinist Apprentice "A" position, it is a Job

12. The job titles held by these four women include data entry operator, receptionist, estimator and stenographer/clerk; these positions are clerical in nature and plaintiff makes no attempt to show that they are "substantially equal".

Pay Group 12A position. (*Id.*). It requires an 8,000 hour coordinated program that couples academic study with work in the particular trade or craft. Mr. Dollar has completed the examination schedule for his craft and meets the legal requirements of the various state and national codes applicable to his craft. (*Id.*) The only position in Job Pay Group 12 held by a female is that of Coordinator for truckloads and carloads. (Exhibit 15 to Mr. Brand's Affidavit). The job of Coordinator does not require 8,000 hours of study or experience, the completion of an examination schedule, or certification under any state or national codes. The degree of skill required to perform Mr. Dollar's job is substantially different, if not greater than the degree of skill required for Coordinator. The job positions are markedly different and Mr. Dollar cannot prove an essential element of his EPA claim.

 E. Charles Edward Harmon. Mr. Harmon has held the position of Fittings Layout Man, which is in Job Pay Group 10. He must be able to read and understand blueprints, use various tools and instruments, apply mathematics, and have a knowledge of basic geometry. (Mr. Brand's Affidavit, Exhibit 13). Mr. Harmon does not attempt to show a female who performed the same or substantially similar work as he did. Defendant shows that the only Job Pay Group 10 held by a female during the period in question is that of Billing Clerk. A billing clerk is required to perform certain typing duties and have a good command of grammar and spelling. The position is not substantially similar to that of a fittings layout man and summary judgment will be granted in favor of the defendant. (Mr. Brand's Affidavit p. 12, par. 17).

V. Conclusion.

None of the named plaintiffs filed a timely EEOC charge which is a necessary prerequisite for a Title VII action. Accordingly, the Title VII claims of the plaintiffs, including the class members, will be dismissed.

Plaintiffs waived any ERISA claims by not arguing them on appeal. Alternatively, such claims are without merit under the facts of this case.

Plaintiffs have offered no evidence on an essential element of their Equal Pay Act claims. The class claims are also dismissed since no class member has affirmatively "opted in" as required.

An appropriate judgment will be entered contemporaneously with this opinion.