United States Court of Appeals,

Eleventh Circuit.

No. 97-8071.

Billy Joe TURLINGTON and Ellen Jocile Turlington, Plaintiffs-Appellants,

v.

ATLANTA GAS LIGHT COMPANY, Randy Curry, Robert Miller, Defendants-Appellees.

Feb. 26, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CV-1872-CC), Clarence Cooper, Judge.

Before BIRCH, Circuit Judge, HILL and KRAVITCH, Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

This case raises two important issues regarding the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34: the timing requirements for filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the standard for awarding attorney's fees to prevailing defendants.

Plaintiffs-appellants Billy Joe Turlington ("Turlington") and his wife, Ellen Jocile Turlington ("Mrs. Turlington"), sued the Atlanta Gas Light Company ("AGL") and two AGL employees, Randy Curry and Robert Miller, alleging, *inter alia,* that AGL discriminated against Turlington on the basis of his age in violation of the ADEA. The district court granted summary judgment to AGL on this claim and awarded attorney's fees to AGL.[1] The Turlingtons appeal both rulings.

We affirm the district court's grant of summary judgment to AGL, but we vacate the attorney's fees award and remand the case to the district court to decide whether the Turlingtons

---

[1]The Turlingtons' remaining claims were either abandoned at the summary judgment stage or dismissed by the district court.

litigated in bad faith and to substantiate its determination with appropriate findings.

I.

Turlington was employed by AGL from May 1967 to March 1995. Initially, he worked in AGL's Information Systems Department ("IS Department"), where he rose to the position of Supervisor of Shift Operations. In February 1990, he was demoted to Class A Computer Operator for failing to demonstrate job improvement during the prior year. Turlington presented evidence indicating that AGL, beginning in February 1990, denied him the same on-the-job training, practice time, skill training, and software training that it provided to his younger co-workers. Although Turlington complained about the denial of training, his supervisors told him that he was incapable of learning new skills.[2]

On July 9, 1993, having received four consecutive below-acceptable annual performance evaluations, Turlington was transferred to the Display Department, where he worked constructing signs manually. In an effort to block the transfer, Turlington submitted a written protest, which was prepared by a lawyer. The attorney also wrote AGL's Chief Executive Officer stating that he was representing Turlington "for the discriminatory action taken against [Turlington] over the last several years culminating with his transfer."[3] Turlington filed no discrimination charges with the EEOC at the time.

---

[2]Among the evidence presented by Turlington was the affidavit of Gary Boykin, an IS Department employee with responsibility for training. Boykin confirmed that Turlington did not receive the same training as younger employees. Boykin also stated that Turlington's supervisor, Ed Norwood, said "that the younger employees were able to grasp the new technology faster and better than the older employees such as Mr. Turlington." Affidavit of Boykin at 4-5. According to Boykin, Turlington not only had the ability to learn but also used vacation time to develop his computer skills.

[3]Plaintiff's Ex. 6 at 1. This lawyer, Ted B. Herbert, was one of the lawyers representing Turlington in the district court proceedings in the instant case.

A year later, Turlington was still working in the Display Department when he applied for a Class C Computer Operator position in the IS Department.[4] On October 12, 1994, Dale Kilpatrick, manager of the IS Department, informed Turlington that he would not be considered for the position because of his previous performance in the IS Department. Turlington was 54 years old at the time.

On December 16, 1994, Turlington filed a discrimination charge with the EEOC alleging that AGL discriminated against him based on age by denying his application for the Class C Computer Operator position and subsequently hiring a 23-year-old man for that position.[5] The accompanying affidavit stated that Turlington failed to obtain the job because his supervisors in the IS Department did not provide the same technical training to Turlington as they did to his younger co-workers.

On January 4, 1995,[6] the staff of the Display Department was told that the Display Department would be downsized to a single Display Coordinator. Later that month the Display Coordinator position was posted, and Turlington and two other candidates applied. After interviews and evaluations, a three-person panel rated each applicant, and based on these ratings, one of Turlington's two competitors, a 44-year-old man, was selected for the position. On February 17, 1995, Turlington amended his EEOC charge to incorporate his claim that AGL's failure to select him as Display Coordinator was discriminatory. Turlington's employment at AGL ended in March 1995.

In July 1995, the plaintiffs filed suit in federal district court alleging that the defendants: (1) discriminated against Turlington on the basis of his age in violation of the ADEA; (2) retaliated

---

[4]The Class C Computer Operator position is ranked lower than the Class A Computer Operator position.

[5]In his brief, Turlington states that he filed his EEOC charge on October 12, 1994, but the record indicates otherwise.

[6]Not at issue in this appeal is the fact that Turlington decided not to choose early retirement, an option available to him from November 15, 1994, to January 3, 1995.

against Turlington for filing an EEOC charge; (3) breached contractual obligations to Turlington in violation of Georgia law; (4) intentionally and/or negligently inflicted emotional distress upon Turlington in violation of Georgia law; and (5) caused Mrs. Turlington's loss of consortium under Georgia law.

Turlington's complaint alleged that AGL violated the ADEA in several ways, including: (1) demoting him in February 1990; (2) failing to provide him adequate training from February 1990 to July 1993, thus "doom[ing][him] to poor performance"[7] and substandard evaluations; (3) transferring him in July 1993; (4) refusing to hire him for the Class C Computer Operator position in October 1994; (5) refusing to hire him for the Display Coordinator position in 1995; and (6) thereafter discharging him.

Defendants filed a motion for summary judgment, which included a request for reasonable attorney's fees. The district court dismissed plaintiffs' claims against defendants Curry and Miller; deemed the retaliation, breach of contract, and emotional distress claims abandoned; dismissed the loss of consortium claim; granted summary judgment to AGL on the ADEA claim; and awarded attorney's fees and costs to AGL. Turlington appeals the district court's resolution of the ADEA claim and the award of attorney's fees.

On appeal, Turlington has narrowed significantly the basis of his ADEA allegations, arguing only that AGL discriminated against him on the basis of age when it denied him the Class C Computer Operator position in October 1994. According to Turlington, that decision was discriminatory because it was based on Turlington's poor evaluations in the IS Department, which in turn resulted from AGL's discriminatory denial of training.

II.

---

[7]Complaint at 6, ¶ 16.

A.

This court reviews *de novo* a district court's grant of summary judgment. We apply the same legal standards that bound the district court and view all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party. *See Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995). Summary judgment is appropriate only when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Where, as here, a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA, this court employs the following burden-shifting scheme. Initially, the plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination. *See Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1556 (11th Cir.1995).

In an ADEA case involving discharge, demotion, or failure to hire, a plaintiff may establish a *prima facie* case by showing: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, ----, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40); *Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir.1996) (listing elements of *prima facie* case). We apply this *prima facie* standard to Turlington's claim that

AGL discriminated by denying him the Class C Computer Operator position in 1994.

Although a plaintiff's burden in proving a *prima facie* case is light, *see Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997), summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case. For example, summary judgment is appropriate against a plaintiff who fails to demonstrate that he was qualified to perform the position for which he was rejected. *See Baker v. Sears, Roebuck & Co.,* 903 F.2d 1515, 1520-21 (11th Cir.1990) (per curiam) (holding that terminated plaintiff failed to make out *prima facie* case under the ADEA; ruling that she was not qualified given her consistent failure to meet employer's quota for sale of maintenance agreements, a requirement of the position).

## B.

In granting summary judgment to AGL on Turlington's ADEA claim, the district court held that Turlington failed to establish a *prima facie* case. Citing *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 796 (11th Cir.), *amended by* 850 F.2d 1549 (1988), which addressed a Title VII claim rather than an ADEA claim, the district court stated that a plaintiff seeking to demonstrate a *prima facie* case under the ADEA must demonstrate, *inter alia,* that "a person outside of the plaintiff's class with equal or lesser qualifications was promoted, or the employer continued to seek applicants after the plaintiff was rejected for the position."[8] Then, focusing on AGL's denial of the Display Coordinator position, the district court ruled that Turlington failed to establish a *prima facie* case because the three-person panel that rated the applicants deemed the successful candidate to be more qualified than Turlington.

Moreover, according to the district court, Turlington could not establish a *prima facie* case

[8]Summary Judgment Order at 6.

by arguing that he *would have been* as qualified as the successful candidate but for AGL's allegedly discriminatory training practices. The district court ruled that such practices could not be used to establish a *prima facie* case because they ended in July 1993, prior to 180 days before Turlington filed charges with the EEOC in December 1994. *See* 29 U.S.C. § 626(d)(1) (stating that an employee claiming a violation of the ADEA must file charges with the EEOC not more than 180 days after the date of the allegedly unlawful practice).

On appeal, Turlington argues that the district court erred in two ways: first, by addressing only AGL's denial of the Display Coordinator position, not the denial of the Class C Computer Operator position, and second, by concluding that 29 U.S.C. § 626(d)(1) precluded Turlington from using time-barred evidence to help establish a *prima facie* case. Abandoning all of his other allegations of ADEA violations, Turlington now argues only that he would have been qualified for the Class C Computer Operator position absent AGL's discriminatory training practices from February 1990 to July 1993.

## C.

Although we disagree with some of the district court's analysis, we nonetheless affirm the district court's grant of summary judgment to AGL on Turlington's ADEA claim.[9] We note that a plaintiff seeking to establish a *prima facie* case under the ADEA must show only that he was qualified to do the job for which he was rejected, *see Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir.1996), and, unlike a Title VII plaintiff, need not show that a person outside of the plaintiff's class with equal or lesser qualifications received the job, *cf. Roberts v. Gadsden Mem'l*

_____

[9]We may affirm the district court's decision for reasons different than those stated by the district court. *See Sec. & Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (stating that the decision of the lower court must be affirmed if the result is correct even though the lower court relied upon a wrong ground or gave a wrong reason), *cited in C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311, 1316 (11th Cir.1992).

*Hosp.,* 835 F.2d 793, 796 (11th Cir.) (Title VII case), *amended by* 850 F.2d 1549 (1988). The district court thus erred in ruling that Turlington, in establishing a *prima facie* case, had to show that "*a person outside of the plaintiff's class with equal or lesser qualifications was promoted,* or [that] the employer continued to seek applicants after the plaintiff was rejected for the position." Summary Judgment Order at 6 (emphasis added).[10]

Because the district court primarily addressed AGL's denial of the Display Coordinator position, the district court did not squarely determine whether AGL's denial of the Class C Computer Operator position was discriminatory. Upon reviewing this allegation, we hold that Turlington failed to establish a *prima facie* case with regards to that adverse employment action. Turlington does not rebut the conclusion of Kilpatrick, the manager of the IS Department, who determined that, in light of Turlington's prior poor performance in the IS Department, Turlington was not qualified even to be considered for the Class C Computer Operator position. Because he was rejected so early in the decisionmaking process, Turlington has failed to demonstrate his qualifications for the job. *Cf. Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 440 (11th Cir.1996) ("[B]ecause the decisionmakers for [the employer] were familiar with [the employee's] performance in his work ... we can infer from the fact that he was granted an interview that [the employee] was at least at some level qualified for the new job."), *cert. denied,* --- U.S. ----, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). Even though the requirements of a *prima facie* case are light, *see id.* at 439, Turlington has

---

[10]The district court also erred by implying that an ADEA plaintiff could not make out a *prima facie* case unless he were replaced by someone outside the protected age class. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, ----, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40). Furthermore, the district court incorrectly stated that the question of whether "the employer continued to seek applicants after the plaintiff was rejected for the position" is relevant in determining if an ADEA plaintiff has established a *prima facie* case.

failed to meet this burden, *see Baker v. Sears, Roebuck, & Co.,* 903 F.2d 1515, 1520-21 (11th Cir.1990) (per curiam) (ruling that ADEA plaintiff was not qualified for her position and thus did not establish a *prima facie* case).

Turlington contends that he *would have been* qualified for the Class C Computer Operator position if he had received better training, and thus better evaluations, while working as a Class A Computer Operator in the IS Department between February 1990 and July 1993. We hold, however, that the district court correctly ruled that Turlington could not use time-barred evidence of allegedly discriminatory training practices in order to establish a *prima facie* case. Two Supreme Court cases, *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), and *Del. State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), support the district court's analysis.[11]

In *Evans,* the Court expressly precluded plaintiffs from using time-barred discriminatory acts to establish a *prima facie* case of employment discrimination. The plaintiff in *Evans* was forced to resign in 1968 when she married in violation of the company's policy of refusing to allow its female flight attendants to be married. 431 U.S. at 554, 97 S.Ct. at 1887. Although the plaintiff was rehired in 1972 after the policy was invalidated, she was not awarded seniority credit for her time off. *Id.* at 555, 97 S.Ct. at 1887. The Court held that the plaintiff could not attack the otherwise neutral seniority system merely by demonstrating that the system gave present effect to past discrimination.

> [A] discriminatory act which occurred before the statute was passed ... may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.... [S]uch a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the

---

[11]The ADEA 180-day limitations period, *see* 29 U.S.C. § 626(d)(1), is quite similar to the Title VII limitations period, *see* 42 U.S.C. § 2000e-5(e)(1).  Thus, although *Evans* and *Ricks* are Title VII cases, they provide clear guidance in the instant ADEA case.

calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer.

*Id.* at 558-60, 97 S.Ct. at 1889-90.

In *Ricks,* the Court extended *Evans* and held that a plaintiff challenging a facially neutral employment termination decision cannot establish a *prima facie* case of discrimination by demonstrating that his termination gave effect to time-barred discriminatory acts.[12] Explicitly rejecting the plaintiff's "continuing violation" theory, *see* 449 U.S. at 257-58, 101 S.Ct. at 504-05, the Court stated:

> It is simply insufficient for [the employee] to allege that his termination gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination. The emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present *violation* exists.

*Id.* at 258, 101 S.Ct. at 504 (quoting *Evans,* 431 U.S. at 558, 97 S.Ct. at 1888) (internal quotations omitted) (emphasis in original).

In light of *Evans* and *Ricks,* Turlington failed to establish a *prima facie* case of discrimination. Turlington alleges that AGL's denial of the Class C Computer Operator position in October 1994, although not discriminatory on its face, nonetheless violated the ADEA by giving

---

[12]The plaintiff in *Ricks,* after being denied tenure, received a one-year "terminal" contract. 449 U.S. at 252-53, 101 S.Ct. at 501. He only filed charges with the EEOC, however, near the end of that contract. *Id.* at 254, 101 S.Ct. at 502. Because the denial of tenure occurred long before the filing of the EEOC charge, the Court held that the plaintiff's termination was facially neutral.

> [T]he only alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later....

*Id.* at 258, 101 S.Ct. at 504 (footnote omitted) (emphasis in original).

effect to past acts of discrimination that occurred from February 1990 to July 1993.[13]  Because

plaintiffs may not use time-barred discriminatory acts to help establish a *prima facie* case of

discrimination, *see Evans,* 431 U.S. at 558-60, 97 S.Ct. at 1889-90, evidence of AGL's prior training

practices cannot render discriminatory AGL's facially neutral decision to deem Turlington

unqualified for the Class C Computer Operator position, *see Ricks,* 449 U.S. at 258, 101 S.Ct. at

504.[14]

We also reject the application of equitable tolling to this case.  ADEA's timing requirements

might have been equitably tolled if, in the period prior to the 180 days before filing the initial EEOC

charge, Turlington had no reason to believe he was a victim of unlawful discrimination.  *See Ross*

*v. Buckeye Cellulose Corp.,* 980 F.2d 648, 660 (11th Cir.1993), *cert. denied,* 513 U.S. 814, 115 S.Ct.

69, 130 L.Ed.2d 24 (1994).[15]  The evidence, however, indicates that Turlington, during his time as

---

[13]The district court correctly found that the allegedly discriminatory training practices ended in July 1993, more than 180 days before Turlington's initial EEOC filing in December 1994. Although the complaint does allege that Turlington was denied requests for computer training while in the Display Department, the complaint does not state that this denial of training was discriminatory.

[14]Recent precedent in this circuit supports our determination that Turlington failed to present a "continuing violation" that would allow AGL's liability to be premised on time-barred acts. *See Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993) (distinguishing between "the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does") (quoting *Beavers v. Am. Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992)).  No continuing violation existed here because AGL's allegedly discriminatory training practices ended prior to 180 days before Turlington filed charges with the EEOC. *Cf. Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 760, 762 (9th Cir.1980) (applying continuing violations theory where allegedly discriminatory promotion, compensation, and training policies continued to exist during the 180-day time period prior to the filing of the EEOC charge).

[15]We need not address here all of the possible grounds for overlooking the ADEA's timing requirements. *Cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

a Class A Computer Operator in the IS Department, protested vigorously against his failure to receive the same training opportunities offered to his younger co-workers. Moreover, Turlington retained his district court counsel at least as of July 9, 1993, upon being transferred out of the IS Department. Under these circumstances, Turlington cannot rely on the theory of equitable tolling to preserve his right to hold AGL liable for discriminatory training practices.[16] *See McClinton v. Ala. By-Products Corp.,* 743 F.2d 1483, 1487 (11th Cir.1984) (rejecting equitable tolling where ADEA plaintiff "suspects that he may have been discriminated against on account of age and is also generally aware of his legal right to obtain redress for that wrong"). The ADEA's limitations period thus bars Turlington from establishing a *prima facie* case based on evidence of AGL's prior discrimination in training.

### D.

Turlington cites several cases purporting to demonstrate that he may establish a *prima facie* case with the help of time-barred evidence of AGL's discriminatory training practices. Turlington, however, fails to dispute the controlling authority of *Evans* and *Ricks.* Moreover, the cases he cites

---

[16]Turlington would have had an actionable claim under the ADEA for denial of training only if, after filing a charge of discrimination with the EEOC in a timely fashion, Turlington had established that AGL denied material training opportunities to him on the basis of age. As this court has held, the ADEA "forbids far more than merely discriminatory discharge and hiring practices." *See Stamey v. S. Bell Tel. & Tel. Co.,* 859 F.2d 855, 860 (11th Cir.1988), *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989). The ADEA makes it illegal for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Discrimination with respect to training programs is thus actionable under the ADEA, *see Kusak v. Ameritech Info. Sys., Inc.,* 80 F.3d 199, 201 (7th Cir.1996) ("An employer might offer training programs, promotion opportunities, or disability benefits to its employees, and the ADEA makes it clear that the employer may not condition access to those benefits on the age of the employee."), as long as the training is materially related to the employee's job responsibilities or possibilities for advancement, *cf. Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 135-36 (7th Cir.1993) (stating that ADEA plaintiff must allege "materially adverse employment action").

are inapposite.

For example, four cases merely hold that a plaintiff can use evidence of time-barred discriminatory conduct to meet his *burden of persuasion* in a case involving circumstantial evidence of discrimination. *See Allen v. County of Montgomery,* 788 F.2d 1485, 1488 (11th Cir.1986); *Downey v. S. Natural Gas Co.,* 649 F.2d 302, 304-05 (5th Cir. Unit B June 1981); *Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 540 (5th Cir.1980), *cert. denied,* 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981); *Mathewson v. Nat'l Automatic Tool Co., Inc.,* 807 F.2d 87, 91 (7th Cir.1986). In none of these cases did the court hold that a plaintiff could use evidence of time-barred conduct to establish a *prima facie* case of discrimination. To the contrary, in *Taylor v. Hudson Pulp & Paper Corp.,* 788 F.2d 1455, 1461-62 (11th Cir.1986), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987), this court explicitly excluded time-barred conduct in determining that the plaintiff failed to establish a *prima facie* case of discrimination.

Turlington also relies on three disparate impact cases that are not applicable here. *See Walker v. Jefferson County Home,* 726 F.2d 1554 (11th Cir.1984); *Crawford v. Western Elec. Co., Inc.,* 614 F.2d 1300, 1314 (5th Cir.1980); *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980). In *Walker,* the plaintiff sued for failing to be selected for an employment position in 1974. 726 F.2d at 1557. The court held that the employer's decision in 1974 was discriminatory, though neutral on its face, because the decision was based on the plaintiff's lack of supervisory authority, which in turn resulted from the employer's discriminatory decision in 1972 to deny the plaintiff a supervisory position. *Id.* at 1558. Recognizing that *Evans, supra,* would bar consideration of the 1972 action in a disparate treatment case, the court deemed the 1972 action relevant because Walker's claim could be characterized as one of disparate impact. *Id.* at 1557 & n. 1. Like *Walker, Crawford* and *Gonzalez* also involved disparate impact claims. *See Crawford,*

614 F.2d at 1314-1318;  *Gonzalez,* 610 F.2d at 244, 249.

Turlington's claim, however, is not based on disparate impact.[17]  To demonstrate disparate impact, a plaintiff must demonstrate that an employer's facially neutral practice or test had an adverse impact on a particular protected group.  *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1520 (11th Cir.1995).  Turlington does not allege that older workers as a class were denied training, but only that *he* was denied training because of his age.  Because Turlington's case relies solely on a disparate treatment theory, *Evans* and *Ricks* preclude him from using time-barred discriminatory acts to establish a *prima facie* case of discrimination.  We thus affirm the district court's grant of summary judgment against him.

III.

Finally, we address the question of whether the district court erred in awarding attorney's fees to AGL. After granting summary judgment to AGL, the district court issued a separate order granting defendants reasonable attorney's fees and costs and dismissing the action. The district court made no findings in support of this order.[18]  The Turlingtons argue that the district court abused its

---

[17]Because we rule that Turlington's claim did not incorporate a disparate impact theory, we need not reach two additional issues:  whether *Walker* is still valid law in light of *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648 (11th Cir.1993) (rejecting disparate impact claim because freezing of compensation levels within 180 days of EEOC filing merely gave effect to prior discriminatory pay and progression system and did not constitute continuing discrimination), *cert. denied,* 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994), and whether the ADEA permits disparate impact claims.  Neither this court nor the Supreme Court expressly has allowed disparate impact claims under the ADEA.  *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) (reserving the issue).  *Compare District Council 37 v. New York City Dep't of Parks and Recreation,* 113 F.3d 347, 351 (2d Cir.1997) (holding that disparate impact theory is cognizable under ADEA), *with EEOC v. Francis W. Parker Sch.,* 41 F.3d 1073, 1076-78 (7th Cir.1994) (suggesting that disparate impact theory is not cognizable under ADEA), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995).

[18]Indeed, with the exception of a brief request for attorney's fees in defendants' motion for summary judgment, the parties did not litigate the issue of attorney's fees before the district

discretion by awarding attorney's fees to the prevailing defendants without having found that the Turlingtons litigated in bad faith.

We review *de novo* the legal basis of a district court's decision to award attorney's fees to prevailing defendants. *Cf. Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1542-43 (11th Cir.1985). This circuit has not determined the circumstances under which a prevailing defendant may obtain attorney's fees in an ADEA case.

The ADEA incorporates selected provisions of the Fair Labor Standards Act ("FLSA"), including those pertaining to attorney's fees. *See* 29 U.S.C. § 626(b) (stating that attorney's fees provision of the FLSA, 29 U.S.C. § 216(b), applies to actions brought under the ADEA). Although the attorney's fees provision of the FLSA does not address whether, or under what circumstances, attorney's fees should be awarded to a prevailing defendant, *see* 29 U.S.C. § 216(b), this court has held that the FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith, *see Kreager,* 775 F.2d at 1542-43 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (stating that courts have the "inherent power" to assess attorney's fees where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons")). Given the close relationship between the ADEA and the FLSA, *see* 29 U.S.C. § 626(b), we hold that a district court may award attorney's fees to a prevailing ADEA defendant only upon a finding that the plaintiff litigated in bad faith. Several other circuits have so ruled. *See EEOC v. Hendrix College,* 53 F.3d 209, 211 (8th Cir.1995); *EEOC v. O & G Spring & Wire Forms Specialty Co.,* 38 F.3d 872, 883 (7th Cir.1994); *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 260 & n. 1 (1st Cir.1986);

---

court.

*Morgan v. Union Metal Mfg.,* 757 F.2d 792, 796 (6th Cir.1985).[19]

Here, the district court made no findings whatsoever regarding the Turlingtons' bad faith in litigating the case. On appeal, AGL points to several of the Turlingtons' litigation decisions as evidence of their bad faith. We believe, however, that an inquiry into a party's bad faith is best conducted by the district court.[20] We thus vacate the attorney's fees award and remand the case to the district court to decide whether the Turlingtons litigated in bad faith and to substantiate its determination with appropriate findings. *See Kreager,* 775 F.2d at 1543 (vacating and remanding where district court awarded attorney's fees to prevailing defendant in FLSA case without making specific findings of bad faith).

---

[19]This rule differs significantly from the rule governing the award of attorney's fees to prevailing defendants in Title VII cases. Title VII, unlike the ADEA and the FLSA, explicitly authorizes the award of attorney's fees to "the prevailing party." *See* 42 U.S.C. § 2000e-5(k). Thus, in Title VII cases, a district court "may in its discretion award attorney's fees to a prevailing defendant ... upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

[20]Relying on *Head v. Medford,* 62 F.3d 351 (11th Cir.1995), AGL contends that this court should decide whether the Turlingtons litigated in bad faith. In *Head,* the district court granted summary judgment to the defendants on the plaintiff's federal civil rights claims, but failed to award attorney's fees to the defendants. *Id.* at 353-55. A prevailing civil rights defendant is entitled to attorney's fees if the plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 355 (citation omitted) (describing attorney's fees statute, 42 U.S.C. § 1988). The *Head* court held that the plaintiff's claims were legally frivolous and that the defendants were entitled to attorney's fees "unless the district court points out special circumstances that justify making no award of fees." *Id.*

This court's limited remand in *Head,* however, is not relevant here. In contrast to the defendants in *Head,* prevailing defendants in ADEA cases are entitled to attorney's fees only if the plaintiffs litigated in bad faith. We believe that the determination of bad faith is a complex inquiry that should be conducted initially by the district court, not an appellate court. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980) (ruling that the district court erred in awarding attorney's fees to a prevailing defendant without making findings as to bad faith; directing that the case be returned to the district court to make appropriate findings).

AFFIRMED IN PART. VACATED AND REMANDED IN PART.