Carl E. KOCHER, Plaintiff,

v.

POE & BROWN, INC., Defendant.

No. 8:99–CV–491–T–17F.

United States District Court,
M.D. Florida.

Oct. 18, 2000.

**1338**

J. David Pobjecky, Law Office of J. David Pobjecky, Winter Haven, FL, Phillip E. Kuhn, Law Office of Phillip E. Kuhn, Lakeland, FL, for plaintiff.

Mark A. Hanley, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant Poe & Brown, Inc.'s Motion for Summary Judgment (Dkt.11), supporting materials (Dkts.14, 15, 16), and Plaintiff's response (Dkts.19, 28).

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of raising this lack of a genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and designate specific facts in affidavits, or in the depositions, answers to interrogatories and admissions, if any, that show a genuine issue of material fact. See *id.* at 324, 106 S.Ct. 2548. Issues of material fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (2d Cir.1980). All reasonable doubts and all justifiable inferences are resolved in favor of the nonmoving party. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). In this case, the Court concludes that there are genuine factual disputes which preclude the entry of summary judgment.

### FACTS

1. Plaintiff's employment began with Poe & Associates on January 15, 1979.

2. Plaintiff was promoted to Branch Manager of Poe & Associates' Winter Haven office in 1980 or 1981.

3. Plaintiff served as a Manager of the Miami office from 1986–1990.

4. From 1990–1998, Plaintiff served as Branch Manager of the Winter Haven office.

5. Plaintiff served as a Branch Manager until he was transferred to the position of producer on June 1, 1998.

6. At the time of the transfer, Plaintiff was fifty-seven years of age.

7. Scott Ohmstede replaced Plaintiff as Branch Manager of the Winter Haven office on June 1, 1998 at the age of thirty-three.

8. On November 10, 1998, Defendant fired Plaintiff as a producer.

9. At the time of the termination, Plaintiff was fifty-seven years of age.

10. On April 28, 1993, Poe & Associates, Inc., through a stock acquisition and

merger with Brown & Brown, became Poe & Brown, Inc.

11. Plaintiff did not file a charge of discrimination under the Florida Civil Rights Act of 1977.

DISCUSSION

I. *Motion For Summary Judgment— Florida Human Rights Act*

Defendant's Motion for Summary Judgment regarding Plaintiff's failure to file a pre-suit complaint with the Florida Commission on Human Rights ("FCHR")in accordance with Fla.Stat. § 760.11 is granted. Plaintiff neither separately filed with the FCHR nor dually filed with the FCHR by affirmatively indicating intent to do so on his EEOC complaint. (Plaintiff's Memorandum in Response, p. 2.)

II. *Circumstantial Evidence of Discrimination—Prima Facie Case*

█ In order to establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must satisfy a four part test: (1) that plaintiff was a member of the protected group of persons between the ages of forty to seventy; (2) that plaintiff was subject to adverse employment action; (3) that a substantially younger person filled the position that plaintiff sought or from which he or she was discharged; (4) that plaintiff was qualified to do the job for which he or she was rejected. *Damon v. Fleming Supermarkets of FL, Inc.*, 196 F.3d 1354, 1359 (11th Cir.1999).

█ Plaintiff has established a prima facie case of age discrimination. First, Plaintiff, fifty-seven years of age, was clearly a member of the protected age group between forty and seventy when the complained of events/decisions occurred. Second, Plaintiff was subject to adverse employment action when he was transferred from manager of the Winter Haven office to a producer in late May 1998, and subsequently was fired as a producer on November 10, 1998. Third, Plaintiff was fifty-seven years old, and his replacement was thirty-three. This twenty-four year difference clearly satisfies the prong that

Defendant replaced Plaintiff with someone substantially younger.

█ Finally, Plaintiff was qualified for the position of manager from which he was transferred. In age discrimination cases, the Eleventh Circuit Court of Appeals focuses on a plaintiff's "skills and background to determine if they were qualified for a particular position." *Damon*, 196 F.3d at 1360 (quoting *Clark v. Coats & Clark*, 990 F.2d 1217, 1227 (11th Cir.1993)). A plaintiff is not required to show proof of qualification in establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988). The Eleventh Circuit has inferred that a plaintiff who has had a long tenure at a certain position is qualified to hold that position. *Clark* at 1227. Plaintiff became the manager of the Winter Haven Office in 1980 or 1981 for Poe and Associates. From 1986 to 1990, Plaintiff served as the manager for the Miami office. Plaintiff again served as the manager of the Winter Haven office from 1990 to 1998. Plaintiff enjoyed a long tenure of seventeen to eighteen years as a manager for Poe & Associates and the Defendant Company. The Court infers that Plaintiff was qualified to be the manager of the Winter Haven office at the time of his transfer.

Any allegations of poor performance made by Defendant to assert Plaintiff was unqualified to continue as manager of the Winter Haven office are not considered in determining whether Plaintiff has established a prima facie case. *Id.* Such allegations of poor performance are considered when a court evaluates the pretextual nature of an employee's offered nondiscriminatory reasons for termination. *Id.*

III. Pretext

█ Since Plaintiff has established a prima facie case, the proffered nondiscriminatory reasons for the transfer and subsequent termination of Plaintiff must be considered. *Damon* at 1361. Plaintiff must then prove Defendant's proffered reasons to be a pretext for age discrimination. *Id.*

**1340**

(citing *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432. (11th Cir.1998)). The Eleventh Circuit has held that a defendant may terminate an employee for a good or bad reason without violating federal law. *Damon,* 196 F.3d at 1361 (citing *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). It is not the Court's job to determine whether Defendant's employment decisions are right or fair, but whether such decisions were motivated by age discrimination. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

■ Defendant has offered non-discriminatory reasons for the demotion and later termination of Plaintiff as a producer. As manager of the Winter Haven Office, Defendant asserts that there was a loss of confidence in Plaintiff's ability to lead the office and stimulate its growth. (Defendant's Memorandum, p. 5). Defendant stated that Plaintiff had budget shortfalls in 1997 and the beginning of 1998, revenue growth and profit numbers were unacceptable, and Plaintiff failed to make desirable acquisitions between 1993 and 1998. (Defendant's Memorandum, pp. 5- 6). When Plaintiff worked as a producer in the Winter Haven office, Defendant claims Plaintiff was fired because of his failure to perform. Defendant alleges Plaintiff did not write new accounts, and was absent from the office for extended periods of time on a regular basis. (Defendant's Memorandum, p. 6).

■ Since Defendant has offered nondiscriminatory reasons for the transfer and termination of Plaintiff, Plaintiff bears the burden of offering significant probative evidence for a jury to conclude that Defendant's reasons are a pretext for age discrimination. *Damon* at 1361 (citing *Bogle v. Orange County Bd. of County Comm'rs,* 162 F.3d 653, 658 (11th Cir.1998); *see also, Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 443–444 (11th Cir.1996)). In making this assessment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993). Based on the depositions and exhibits, Plaintiff has met the burden of offering such probative evidence for a jury to conclude Defendant's reasons are pretextual and that discrimination may have been the real reason. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371 (11th Cir.1996).

a. Transfer

There are questions of material fact concerning the reasons and circumstances set forth by Defendant for the transfer of Plaintiff from Office Manager to producer. The lack of revenue growth may be questioned by the success of Plaintiff's office in meeting company goals for 1997, set out and communicated to Plaintiff by Mr. Para in a letter dated January 29, 1997 (Exhibit 2). By the end of 1997, Plaintiff claims he received a salary increase for meeting these goals. Mr. Para admits this raise. (Deposition of Para, p. 50). In addition, Plaintiff's office missed the company goal of money in new business by 0.4 percent, while eight out of twenty-three branch offices missed their stated goal by 20 percent or more. (Deposition of Para, pp. 52–54). At the conclusion of 1997, Plaintiff's office finished eighteenth out of thirty-eight Offices in profitability. (Deposition of Para, p. 61). In 1997, Kocher placed seventh out of nineteen producers of new business for Defendant Company. (Deposition of Para, p. 71–72; Exhibit 11).

Defendant's claim that Plaintiff failed to acquire producers may be legitimately challenged by the promotion of Ms. Sasser as a producer for Plaintiff's Winter Haven Office in late 1997 or early 1998. Although Defendant Company does not consider the promotion of Ms. Sasser to be the actual "hire" of a producer, the result was the same. (Deposition of Para, pp. 113–115). Plaintiff's office gained a seemingly viable producer in Ms. Sasser with a record of $50,000 in sales/productivity. The argument that Ms. Sasser is not a legitimate producer acquisition by Plaintiff because

she was promoted from within adds to the conclusion that there exists a question as to whether Defendant's stated reason may have been pretextual.

Defendant's assertion that Plaintiff was fired due to a failure to make acquisitions may be questioned. A manager starts the acquisition process by contacting an interested seller and gathering information and data to submit it to Defendant Company's Acquisition Committee. The information and data is considered and then Defendant Company makes an offer to buy the interested seller's business. (Deposition of Para, pp. 101–102). Since the manager's major role in this process is to find the interested seller, Plaintiff fulfilled this role in 1997 by locating an interested seller, compiling the information, and sending it before the Acquisition Committee to consider. (Deposition of Para, pp. 102–103). The fact that the seller backed out of the prospective deal is not necessarily Plaintiff's fault. Plaintiff put in the effort and made the contact. Further, Plaintiff claims to have brought a second possible acquisition before the Committee before his transfer. The acquisition was consummated a month after Ohmstede became manager of the branch office (Plaintiff's Memorandum in Response, p. 10; Deposition of Para, p. 112). Although the acquisition may have been finalized after Plaintiff's transfer, Plaintiff argues that he was the source of that eventual acquisition. This amounts to probative evidence which raises a question of material fact.

Further evidence to support the assertion that Defendant's reason may be pretextual is Defendant Company's acceptance of Mr. Ohmstede's lack of acquisitions from June 1, 1998 to March 7, 2000. Mr. Ohmstede succeeded Plaintiff as manager of the Winter Haven office. Mr. Ohmstede admitted the lack of any company directive or deadline to acquire new insurance companies. (Deposition of Ohmstede, pp. 57–58). There appears to be a lack of concern by Defendant on this issue when it comes to Mr. Ohmstede, while the same purported failure by Plaintiff contributed to his transfer from manager to producer.

## b. Termination

Plaintiff offered evidence for a jury to conclude the reasons set forth by Defendant for firing Plaintiff as a producer may be pretextual. Defendant's reasons for the termination include Plaintiff's failure to generate viable leads, failure to write new accounts, and Plaintiff's absence from the office for extended periods of time. Although Plaintiff's annual premium income for the Company was $256,763, there is evidence that Plaintiff did not just stop activity as a producer, and rest on that figure. Plaintiff made more calls or contacts than any other producer in the Winter Haven office during his time as a producer, regardless of whether Plaintiff made these calls by his own motivation or as a result of pressure by Mr. Ohmstede. (Deposition Of Ohmstede, p. 103). The fact that Plaintiff made more phone calls than any other producer, twenty-eight, does not fit with the assertion that Plaintiff's motivation to make such contacts and generate leads was lacking. In addition, evidence supports the assertion Plaintiff brought two prospective deals to Defendant Company worth $27,475 during his service as a producer. (Deposition Of Ohmstede, pp. 72–73; Exhibit 1).

Defendant's proffered reason that Plaintiff was terminated because of absences from the office for extended periods of time may be questioned, considering Plaintiff had only eight weeks in the position as a full-time producer. Plaintiff took a scheduled vacation between the day of his transfer, June 1, and the day he started as a producer, June 12 (Deposition of Ohmstede, p. 88). Plaintiff's father passed away sometime in early August, and it is expected that Plaintiff may have taken time to grieve and make appropriate arrangements. With the exception of these two absences, there is no evidence to support the assertion of extended absences on the

**1342**

part of Plaintiff to merit his termination. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.11) regarding Plaintiff's Florida Human Rights claim is **granted,** and it is further

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.11) regarding Plaintiff's establishment of a prima facie case of age discrimination and introduction of probative evidence to establish pretext is **denied.**