[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11931
Non-Argument Calendar
_____

D.C. Docket No. 4:11-cv-00379-LC-CAS

JOSE M. CHARRIEZ,

Plaintiff-Appellant,

versus

SECRETARY,
FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

Defendants,

E. STINE,
Bureau of Inmate Grievance Appeals,
MARK GARCIA,
Senior Inspector,
DANIEL BANNISTER,
Assistant Warden,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 9, 2015)

Before HULL, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jose M. Charriez, a Florida inmate, pro se appeals several district court rulings in his 42 U.S.C. § 1983 action against three prison officials. In his second amended complaint, Charriez claimed the temporary suspension of his visitation privileges violated his substantive and procedural due process rights.[1] Charriez challenges the grant of summary judgment in favor of defendant Mark Garcia, a senior inspector with the Florida Department of Corrections ("FDOC") who investigated the introduction of contraband into Sumter Correctional Institution ("SCI") and initiated the process of suspending Charriez's visitation privileges. Charriez also challenges the earlier dismissal of his complaint against defendant Daniel Bannister, the assistant warden, and E. Stine, an official with the FDOC's Bureau of Inmate Grievance Appeals. Charriez claims defendants Bannister and

_____

[1]While Charriez is now an inmate at Hardee Correctional Institution, this case involves his incarceration at Sumter Correctional Institution ("SCI").

2

Stine violated his due process rights in the prison grievance process when they affirmed his suspension.  After careful review of the record and briefs, we affirm.

## I.  BACKGROUND

### A.    Investigation and Suspension of Visitation Privileges

Between January 24, 2011 and April 25, 2011, the Office of the Inspector General of the Florida Department of Corrections conducted an investigation regarding the introduction of contraband, specifically marijuana, at SCI.  Though Charriez was not initially a target of the investigation, defendant inspector Garcia discovered evidence that Charriez and another inmate, Jose Feliciano, were potentially involved in the transfer of money for contraband.  Specifically, Garcia determined, from recorded phone calls from SCI, that Feliciano was instructing his mother to transfer money to Charriez's mother, who then deposited money into Charriez's inmate account.

During his investigation, defendant Garcia interviewed Charriez's mother, as well as inmate Feliciano, who admitted involvement in the contraband drug trade in the prison.  Charriez's mother stated that Charriez had told her to tell defendant Garcia that the financial transactions was for "boots" sold at the prison. Ultimately, Garcia determined there was "reason to believe that Jose Charriez was involved in the introduction of contraband into SCI in violation of § 944.47,

3

Florida Statutes and/or extortion in violation of § 836.05, Florida Statutes."

Defendant Garcia avers that this investigation did not produce sufficient evidence

to bring criminal charges against Charriez, but that it did produce evidence

sufficient to issue a disciplinary report to Charriez.

That disciplinary report, however, was not made in writing.  Garcia averred

that such a report would have made public the evidence of the investigation,

jeopardizing future investigations and potentially endangering other inmates.

Instead, Garcia contacted defendant Bannister, the acting warden at SCI at the

time, and requested that Charriez's visitation privileges be temporarily suspended.[2]

On April 15, 2011, the Institutional Classification Team ("ICT") at SCI

suspended Charriez's visitation privileges "until further notice."  Charriez received

both verbal and written notice of the suspension.

## B.    The Grievance Process

On April 19, 2011, Charriez filed an informal grievance regarding the

suspension.  On April 21, 2011, the ICT issued a response, indicating that the

"[i]ssue [was] currently under investigation."  Charriez filed a second informal

grievance on April 26, 2011, which was returned without action on May 3, 2011.

On May 6, 2011, Charriez filed a formal grievance.  In response, the

grievance coordinator at SCI requested that defendant Garcia document the

---

[2]Garcia also averred that, other than later providing a response to Charriez's formal grievance, he had no other involvement in the suspension of Charriez's visitation privileges.

rationale for Charriez's suspension.  He did so.  Garcia's memorandum details his investigation, highlights that Charriez's involvement of his mother in the introduction of contraband caused <u>her</u> to violate the "Visitor Rules of Conduct," and indicates that visitation privileges may be suspended for up to one year.

On May 26, 2011, a formal response to the grievance was issued, reciting the contents of Garcia's memorandum.  The response was signed by the classification supervisor at SCI and by the assistant warden at SCI, defendant Bannister.  The response stated that the suspension of visitation privileges was temporary, for a period of up to one year, and outlined the procedure for further administrative review.

On June 3, 2011, Charriez filed such a grievance appeal.  On June 22, 2011, it was denied.

On May 11, 2012, Charriez's visitation privileges were reinstated.

## C.    The District Court Proceedings

On August 2, 2011, Charriez initiated this § 1983 civil action.  On May 22, 2012, following motions and amendments not relevant to this appeal, Charriez filed his second amended complaint, seeking a declaratory judgment that his due process rights had been violated, injunctive relief regarding the procedures for suspending visitation privileges, $100 in nominal damages from each defendant, and recovery of costs.

5

On June 25, 2012, the defendants filed a motion to dismiss for failure to state a claim. On July 30, 2012, Charriez responded. On October 31, 2012, a magistrate judge (to whom the case was earlier assigned) issued a report and recommendation that the motion to dismiss be granted as to defendants Bannister and Stine, who participated in the prison grievance process, but denied as to defendant Garcia, who conducted the investigation and recommended the suspension. On March 25, 2013, the district court adopted the report and recommendation.

Discovery followed as to defendant Garcia. On August 28, 2013, defendant Garcia filed his motion for summary judgment. On October 15, 2013, Charriez filed a motion to reinstate defendant Bannister that also sought summary judgment in favor of Charriez against defendants Bannister and Garcia.

On March 3, 2014, the magistrate judge issued a report and recommendation concerning these motions, recommending that Garcia's motion for summary judgment be granted, that Charriez's cross-motion for summary judgment be disregarded for failure to timely file and comply with local rules, and construing Charriez's motion to reinstate defendant Bannister as a Rule 60 motion, which he recommended be denied.

On March 31, 2014, the district court adopted the report and recommendation in full.  On April 2, 2104, the district court entered final judgment in favor of the defendants.

On April 22, 2014, Charriez timely filed this appeal.  We review the summary judgment ruling and then the earlier dismissal ruling.

## II. DISCUSSION

### A.    Summary Judgment

Charriez appeals the grant of summary judgment in favor of defendant Garcia.[3]

Charriez brought this action under 42 U.S.C. § 1983.  To prevail under § 1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985 (1999).

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."

---

[3]We review a district court's grant of summary judgment de novo.  Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this determination, we view "the evidence and all factual inferences therefrom in the light most favorable to the non-moving party," and we resolve "all reasonable doubts about the facts in favor of the non-movant."  Skop, 485 F.3d at 1136.

Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). As with any procedural due-process claim, we must first determine whether the injury claimed by the plaintiff is within the scope of the Due Process Clause. See Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999). Charriez would only be constitutionally entitled to procedural due process if he were deprived of a protected liberty interest.

It is settled that prisoners may, under certain circumstances, claim the protections of the Due Process Clause. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974 (1974) (applying limited due process protection to the loss of statutorily-provided good time credits that would have reduced the length of an inmate's sentence). But "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298 (1995) (quotation omitted).

Nonetheless, the Supreme Court has indicated that states may, under certain circumstances, create liberty interests that are protected by the Due Process Clause, but these interests will be generally limited to cases where the state or local law cabins the prison official's discretion and when the prison official's actions "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84, 487, 115 S. Ct. at 2300, 2302 (holding that 30 days of disciplinary segregation did not present the type of atypical, significant

8

deprivation, did not increase the duration of the sentence, and thus did not give rise to a protected liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that two months of administrative confinement did not implicate a protected liberty interest).

The Supreme Court has held that an inmate does not have a liberty interest in or right to "unfettered visitation" and thus denial of visitation is not protected by the Due Process Clause. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61, 109 S. Ct. 1904, 1908-09 (1989) (concluding that "[t]he denial of prison access to a particular visitor . . . is not independently protected by the Due Process Clause"); see also Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994) (holding that "inmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives").

Accordingly, the district court did not err in granting summary judgment as to the procedural due-process claims against defendant Garcia because, under the Due Process Clause, Charriez did not have a protected liberty interest in unfettered visitation privileges while in prison. See Thompson, 490 U.S. at 460-61, 109 S.Ct. at 1908-09. Nor did Charriez have a state-created liberty interest in unfettered visitation such that a one-year suspension of his visitation privileges would impose "atypical and significant hardship" in relation to ordinary prison life. See Sandin,

512 U.S. at 484, 115 S. Ct. at 2300.[4]  Withdrawal of visitation privileges for a designated period of time as a means of effecting prison discipline did "not present a dramatic departure from the basic conditions" of confinement within Charriez's sentence.  See Id. at 485, 115 S. Ct. at 2301.

We must also reject Charriez's claim that the denial of visitation for one year, based on defendant Garcia's investigation and disciplinary recommendation, violated his First Amendment right of association.  Prisoners do retain First Amendment rights because "prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  Thornburgh v. Abbot, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878 (1989) (alteration adopted).  However, prisoners only retain those rights to the extent that they are "not inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system."  Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008).

And in Overton v. Bazzetta, the Supreme Court concluded that Michigan state regulations which restricted inmates' visitation privileges did not violate the First Amendment.  539 U.S. 126, 128, 131, 123 S. Ct. 2162, 2165-67 (2003) (upholding suspension of visitation privileges for a minimum of two years for

---

[4]Charriez makes a separate substantive due-process claim.  It too fails.  Substantive due process protects against government power arbitrarily and oppressively exercised.  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 1716 (1998).  Such abuse of power must "shock[ ] the conscience."  Id. at 846, 118 S. Ct. at 1717. And "only the most egregious official conduct will be the sort of abusive executive action that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim."  Tinker v. Beasley, 429 F.3d 1324, 1328 (11th Cir. 2005) (quotation omitted).

inmates with two substance abuse violations). The Supreme Court stated that the constitutional "freedom of association is among the rights least compatible with incarceration" and that "[s]ome curtailment of that freedom must be expected in the prison context." Id. at 131, 123 S. Ct. at 2167. It further declined to analyze to what extent this First Amendment right to association might survive incarceration, stating:

> We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners. We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question.

Id. at 131-32, 123 S. Ct. at 2167 (emphasis added). In this case, the temporary suspension of Charriez's visitation privileges bore a rational relationship to the legitimate penological interest of discipline, which suffices to sustain the defendants' actions under the facts of this particular case.

Charriez separately argues that the district court abused its discretion by declining to address his cross-motion for summary judgment. As noted by the magistrate judge, Charriez's cross-motion for summary judgment failed to comply with the Northern District of Florida's Local Rules. It did not include a short and concise statement of material facts to which the moving party contends there is no

11

genuine issue to be tried.  See N.D. Fla. Local Rule 56.1(A).  In any event, Charriez's cross-motion fails for the same reasons the defendants' motion prevails.

## B.    Motion to Dismiss

Charriez also appeals the dismissal of defendants Bannister and Stine.[5]  We view the complaint in the light most favorable to the plaintiff Charriez, and all of the plaintiff's well-pled facts are accepted as true.  Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007).  The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Additionally, we may affirm the district court on any ground supported by the record.  See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 n.9 (11th Cir. 1998).

Defendants Bannister, as assistant warden at SCI, and Stine, as representative of the Bureau of Inmate Grievance Appeals, played supervisory roles in the administration of discipline at the Sumter prison.  "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation omitted).  For supervisory liability to exist under § 1983, a plaintiff

---

[5]We review de novo a district court's ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

12

must allege either personal participation by the supervisor or that "a causal connection between [the] actions of the supervising officials and the alleged constitutional deprivation." Id.

In addition, "a prison grievance procedure does not provide an inmate with a constitutionally protected interest." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011); see also Doe v. Moore, 410 F.3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." (quotation omitted)).

Here, the district court did not err in concluding that Charriez failed to state a claim upon which relief may be granted when he asserted in his second amended complaint that defendants Bannister and Stine had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges. Because the prison grievance procedure does not create a protected liberty interest, Charriez does not have a federal constitutional right within that administrative-grievance procedure. See Bingham, 654 F.3d at 1177; see also Turlington, 135 F.3d at 1433 n.9.

However, the district court did err by failing to address Charriez's claims that defendant Bannister had violated his procedural and substantive due-process rights by initiating the suspension of his visitation privileges. Nonetheless, we

13

affirm the dismissal of Bannister's due-process claims on other grounds.  See

Turlington, 135 F.3d at 1433 n.9.  Charriez did not sufficiently allege claims of

procedural due-process violations because he does not have a protected

constitutional interest in visitation privileges, and he failed to sufficiently allege

claims of substantive due-process violations because the alleged conduct does not

rise to the level of behavior that "shocks the conscience."  See Cnty. of Sacramento

v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716-17 (1998). [6]

### III.  CONCLUSION

For the reasons discussed above, we find no reversible error in the district

court's grant of summary judgment in favor of defendant Garcia or in the dismissal

of the complaint against defendants Bannister and Stine.

**AFFIRMED.**

---

[6]Charriez further argues that the district court erred in construing his request to reinstate the claims against Bannister as a Federal Rule of Civil Procedure 60 motion for relief from judgment.  In this, Charriez is correct.  Rule 60 offers relief only from final, appealable orders.  Given that the dismissal of Bannister was before the final judgment, the district court should have construed Charriez's request as a motion for reconsideration under Federal Rule of Civil Procedure 54(b).  See Fed.R.Civ.P. 60(b); Mesa v. United States, 61 F.3d 20, 22 (11th Cir. 1995) (holding that a plaintiff generally cannot render as final and appealable an order dismissing some but not all of the claims in a case, without certification for an interlocutory appeal under Rule 54(b)).  Even viewing Charriez's request as a motion for reconsideration, we conclude that the district court did not err in denying it as to Bannister for the reasons discussed above.